H. H. SAWYER, Appellant, v. MARGARET C. HAWTHORNE and W. S. HAWTHORNE, Appellees.

**Contract:** SUBSTITUTION: BREACH: BURDEN OF PROOF. The defenses
1 to an action for breach of contract that a new agreement upon a new consideration was substituted for the original agreement, and that the new agreement was in complete settlement of plaintiff's claim for damages, are affirmative defenses to support which the defendant has the burden of proof.

**Same:** MODIFICATION: ACCORD AND SATISFACTION. A new contract or
2 a new promise or agreement may be accepted in satisfaction of a previous obligation, whether performed or not. And if accepted, the remedy for a breach thereof is upon the new agreement and not upon the old one; but ordinarily it is the performance of an

agreement and not the mere promise which amounts to a satisfaction. Ordinarily an accord without satisfaction is of no validity and does not supersede the original agreement.

**Same:** MODIFICATION OF CONTRACT: EVIDENCE. In this action for breach of contract to convey real property, the question of whether a new agreement was intended to take the place of the original agreement was for the jury.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

TUESDAY, NOVEMBER 24, 1914.

ACTION at law to recover damages for breach of contract to sell and convey real estate. Defendant W. S. Hawthorne was dismissed from the case on the theory that he was a mere agent for the sale of the property, his codefendant being the principal and the real owner thereof. Whilst defendant Margaret C. Hawthorne filed a general denial, her main defenses were a novation or discharge of the original contract by the making of a new one on an independent consideration, and a settlement or accord and satisfaction of her obligation to convey. At the conclusion of the testimony offered for plaintiff, the trial court on motion directed a verdict for defendant, and plaintiff appeals.—*Reversed.*

*J. E. Holmes* and *H. H. Sawyer,* for appellant.

*Chester J. Eller* for appellee.

DEEMER, J.—The verdict being directed at the close of plaintiff's case, the testimony and the inferences therefrom should be construed most favorably to plaintiff and appellant; and a perusal of the record indicates that there is no conflict in the evidence, and little or no doubt regarding the proper inferences to be derived therefrom. Margaret C. Hawthorne was the record owner of a certain house and lot in the city of Des Moines, and W. S. Hawthorne was ostensibly, at least, her

agent for the sale thereof. Plaintiff, before the execution of the contract; to which we shall presently refer, was a tenant of the property and he entered into negotiations with the agent thereof which finally resulted in a written contract for the purchase of the property. The contract, so far as material, reads as follows:

This agreement, made this 6th day of May, A. D. 1911, between W. S. Hawthorne of the county of Polk and state of Iowa, party of the first part and H. H. Sawyer of the county of Polk and state of Iowa, party of the second part:

1. Witnesseth that party of the first part hereby agrees to sell to party of the second part, on the performance of the agreements of the party of the second part, as hereinafter mentioned, the following described real estate, situated in the city of Des Moines, county of Polk and state of Iowa, and to convey the same or cause to be conveyed by warranty deed whenever the terms of this contract are complied with.

2. Party of the first part further agrees to furnish to party of the second part, or his assign, a good and sufficient abstract of title showing the lawful title of record in said premises to be without incumbrance, except such liens and incumbrances as are imposed thereon by party of second part or assigns since the execution of this contract.

3. Party of the first part further agrees to make the following alterations and improvements on the said premises before the fifteenth day of September, A. D. 1911, and before the payment of two hundred fifty dollars ($250.00) to be payable on that date shall be due or payable.

(1) To replace all broken window glass on said premises.

(2) To remove the water pipes in the rooms on the second floor and then on first floor.

(3) To place a sill cock at the south side of the house near the east corner, and to place a new faucet in the cellar.

(4) Reset all loose brick in the foundation of the house on the premises and repair all defective plumbing.

(5) To put a cement floor in the coalroom of the premises and repair the cement drive.

4. In consideration of the above, party of the second part agrees to purchase from the party of the first part the following described property: [Here follows description of prem-

ises] and known as No. 2112 Drake Park Ave., Des Moines, Polk county, Iowa, and to pay for the same as follows:

5. To assume and pay a mortgage not to exceed two thousand six hundred eighty-five dollars ($2,685) at not to exceed six and one-half per cent. interest per annum, payable semi-annually on the tenth day of October and April each year, now outstanding against said premises, and to pay the further sum of two thousand one hundred and sixty-five dollars as follows: Fifty dollars ($50.00) on the delivery of this contract and two hundred fifty dollars on or before September fifteenth, 1911. Seven hundred dollars on or before January fifteenth, 1912, and the further sum of thirty-five dollars ($35.00) on the fifteenth day of each month, beginning on the fifteenth day of September, 1911, until the full amount of this contract is paid.

6. It is further agreed by both parties to this contract that all of the amounts referred to in paragraph 5 of this contract except the mortgage shall bear interest at the rate of seven per cent. (7%) per annum from the fifteenth day of September, 1911, until it is paid. That party of the second part shall pay party of the first part the further sum of thirty-five dollars ($35.00) per month as rental for the above premises until the fifteenth day of September, 1911. That everything on the above described premises is to remain and go with the premises except a trunk and certain personal effects belonging to party of the first part now stored in the attic of said premises. That party of the second part shall pay the second installment of taxes for 1910 and second installment of interest for 1911 on the above described mortgage, but that the amount so paid shall be deducted from the amount to be paid to party of the first part as purchase price.

Witness our hands this 6th day of May, A. D. 1911.

[Signed]                              W. S. Hawthorne.
                                      H. H. Sawyer.

Plaintiff assigned this contract without the consent of the vendor about September 15, 1911, to one McGregor, and McGregor entered into possession of the premises on September 29th of the same year. The improvements which the vendor had agreed to make before September 15th had not all been made, but McGregor, on September 15th in the presence of

the plaintiff, tendered to Hawthorne a check for $250 to meet the payment falling due on that date, and also a check for the rentals called for by the contract. He also demanded an abstract of title to the property, and this was furnished him. This was submitted by McGregor to his attorneys, and these attorneys found objections thereto, and particularly to the fact that W. S. Hawthorne, who apparently sold the property as his own, had stated such facts with reference to the true ownership, that one of the attorneys, finding some judgments of record against him, Hawthorne, advised McGregor not to accept the title as shown by the abstract, and McGregor stopped payment of the check and demanded of the Hawthornes that they meet the objections made by the attorneys. This was not done to the satisfaction of McGregor and his attorneys, and McGregor then went to plaintiff and the two made a settlement of their deal for the assignment of the contract, resulting in a reassignment of the contract to plaintiff; McGregor agreeing therein to surrender possession of the property on or before the 1st day of December, 1911. McGregor moved out pursuant to agreement, and surrendered the keys of the property to plaintiff. Plaintiff, before the assignment, had made some improvements upon the lot, amounting, as he claims, to something like $60, and both before and after the assignment of the contract and the reassignment of the same to him demanded of defendant that he (or she, the owner) comply with the conditions of the contract on their part, which he testifies they failed and neglected to do. He also demanded the complete performance of the contract by them. This they absolutely refused to do; the defendant stating that she would do nothing more in fulfillment of the terms thereof. Negotiations were then had regarding a settlement, and finally the defendant executed the following paper which, with the original contract and the check referred to in this latter statement, were delivered to the German Savings Bank. This latter document reads as follows:

Des Moines, Iowa.  11—28—11.  German Savings Bank, Des Moines, Iowa—Gentlemen: Please find inclosed herewith my personal check for $50.00 payable to H. H. Sawyer, and note of Margaret C. Hawthorne for $25.00, and one check to C. D. McGregor for $35.00 under date of Sept. 15, 1911, and one dated Sept. 15, 1911, for $250.00 signed by C. D. McGregor, all of which are to be turned over to said H. H. Sawyer after he deposits a certain written contract dated the sixth day of May, 1911, to be designated by C. J. Eller as the contract referred to and when C. D. McGregor moves out of the property described as No. 2112 Drake Park Ave., being the West 63 feet of lot one, block two, Cottage Grove addition to the city of Des Moines, and it is expressly agreed between said Sawyer and Margaret C. Hawthorne that said McGregor move out of said property on or before December 4th, 1911, and that if said McGregor does not move out on or before Dec. 4th, 1911, or said Sawyer does not cause said McGregor to move out by said time, then said Sawyer forfeits all rights to the contract.  Note and check for $50.00 and note for $25.00 are to be turned over to said Sawyer whenever said C. J. Eller notifies said bank that said conditions have been complied with, that is, the moving out of said McGregor out of said property and the surrender of said contract and all rights thereunder by said Sawyer and said McGregor.  But said contract or money is not to be delivered to either party until authorized by the other party to this agreement.

> Margaret C. Hawthorne,
> By C. J. Eller, Atty.
> H. H. Sawyer,
> Atty. for C. D. McGregor.

Margaret C. Hawthorne agrees to deposit $25.00 cash for said Sawyer before the 4th inst. (Dec. 1911) in place of note above described.

> Margaret C. Hawthorne,
> Per C. J. Eller, Attorney.

As already stated McGregor moved out of the premises before December 1st, and surrendered the keys to plaintiff. Plaintiff went to the property and looked it over, but the next morning upon returning to it again, he found that the defend-

ant, without performing the conditions contained in the letter
to the German Savings Bank, had surreptitiously taken posses-
sion of the property, changed the locks and had the keys
thereto. Plaintiff then offered again to perform the terms of
his original contract upon performance by defendant of her
obligations, and this she absolutely refused to do; her attorney
stating in rather peremptory terms that plaintiff could have
nothing more than a court would allow him. This action imme-
diately followed, plaintiff asking damages for the amount ex-
pended and the value of the work performed by him upon the
property, and for the loss of his bargain in the purchase of
the property. On the trial he introduced some testimony as to
the nature of the improvements put upon the place, and also
some evidence that the property was worth from $5,000 to
$5,500, while the purchase price was not to exceed $3,900.
The trial court directed the verdict on the theory: (1) That
as plaintiff had assigned his contract he could not complain of
defendant's failure to perform the conditions thereof, while
the assignment was in force; (2) that McGregor was not justi-
fied in stopping payment of his checks because there was no
defect in the title (although testimony tending to establish
these defects was, as we think, improperly rejected by the
court) ; (3) a waiver by plaintiff or his assignee of defend-
ant's failure to comply with the provisions of the contract.
We are constrained to hold that none of these grounds were
good under the record here disclosed. There was no waiver
by either McGregor or plaintiff, and McGregor, under the cir-
cumstances, was justified in stopping the payment of his
checks. His attorneys had in good faith objected to the title,
and defendant had attempted to make some of the objections
good; but, while this matter was still pending, the reassign-
ment to plaintiff was made by consent of all the parties. The
original assignment to McGregor cuts little figure in the case
save as it affects the payment made by him or attempted to be

made, to meet the terms of the agreement. The reassignment to plaintiff was expressly recognized by defendant, and it was treated as valid by the parties, or at least as not abrogated, in the attempt to settle their difficulties.

In this court defendant relies strongly upon two propositions in support of the trial court's ruling. The first is that the original contract was discharged by the contract and letter
**1. CONTRACT:** addressed to the German Bank, that this was
**substitution:** intended as a substitute for the original agree-
**breach: burden**
**of proof.** ment, was based upon a new and independent consideration, and that plaintiff's remedy, if he has any, is upon that contract and not upon the original. Second that this subsequent contract or agreement was a full settlement and complete accord and satisfaction of plaintiff's claims for damages. These are affirmative defenses, the burden being upon the defendant to establish the same. While defendant pleaded a new and independent consideration for this second agreement, there is no testimony in support thereof. Indeed the testimony was exactly to the contrary. It was not intended as a substitute for the original, nor as a complete novation for the reason that it recognizes the contract and contains nothing counter thereto save as performance would amount to a forfeiture thereof. Surely it cannot be said that this second unilateral contract was intended as a substitute for the original, or as an extinguishment thereof save as it was performed by the party who signed it. Of course plaintiff, by failure to perform his part of the agreement, without excuse, might forfeit the original contract, but the testimony shows no failure on his part to perform. At best this second contract amounted to a satisfaction of the original agreement, or was accepted as a settlement thereof. This is not primarily a question of law, but one of fact, dependent upon the intention of the parties as disclosed by the testimony.

Ordinarily an accord without a satisfaction is of no validity; and an accord without satisfaction does not supersede or

discharge the original contract. Of course a new contract or a
new promise or agreement may be accepted
in satisfaction of a previous agreement or ob-
ligation, whether performed or not, and if so
accepted the remedy for breach thereof is upon the new agree-
ment and not the old one. But, as a rule, it is the performance
of the agreement and not the mere promise which amounts to
a satisfaction. *Hall v. Smith,* 10 Iowa, 45; Parsons on Con-
tracts, page 194 *et seq.; Bradley v. Palen,* 78 Iowa, 126; *Band-
man v. Finn,* 185 N. Y. 508 (78 N. E. 175, 12 L. R. A. (N. S.)
1134) ; *Hart v. Accident Ass'n,* 105 Iowa, 717; *Sioux City Co.
v. Packing Co.,* 110 Iowa, 396; *Walston v. Calkins,* 119 Iowa,
150; *Hall v. Wickersham,* 15 Iowa, 154; *Merry v. Allen,* 39
Iowa, 235; *Fritz v. Fritz,* 141 Iowa, 721.

2. SAME: modifi-
cation: accord
and satisfac-
tion.

The most that defendant may claim here is that the ques-
tion was one for a jury after all the testimony was adduced.
In solving the problem the fact that there was no new and
independent consideration, and that the last
agreement was unilateral in character, and
that such agreements as a rule do not, in and
of themselves, amount to a settlement and satisfaction, are
important to be considered. And if the case stood upon the
testimony alone, without anything from defendant in sup-
port of her claim, we should say that there has been no set-
tlement, accord and satisfaction as pleaded by defendant, and
no novation of contracts. The original agreement has never
been forfeited, and plaintiff, before commencing suit, did
all that was required of him. Defendant absolutely refused
to recognize the contract of settlement, and plaintiff was un-
der no obligation to make any other tender than he did. The
express declaration of defendant that she would not perform
relieved plaintiff from doing anything more than was done.

3. SAME: modifi-
cation of con-
tract: evi-
dence.

What we have said indicates that certain rulings made
by the trial court on the reception and rejection of testimony
were erroneous. These need not be pointed out specifically,

as the views already expressed will be a sufficient guide on a retrial of the case.

For the errors pointed out, the judgment must be and it is—*Reversed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.