ELIZABETH U. CHERRY, Appellee, v. W. W. WELSHER, Appellee, et al., Appellants.

**MORTGAGES: Release—When Set Aside.** A mortgage which is released because of a misunderstanding will be reinstated against

all parties who have in no manner changed their position because of such release.

**MORTGAGES: Lien—Presumption.** Principle reaffirmed that a mortgage lien is presumed to continue until the debt is paid.

**MORTGAGES: Satisfaction—Taking Additional Security.** The taking of a chattel mortgage as additional security for interest due on a real estate mortgage does not work a release of the latter mortgage.

*Appeal from Marion District Court.*—H. S. DUGAN, Judge.

*                MARCH 6, 1923.

ACTION to foreclose a real estate mortgage and to cancel a recorded release of a former mortgage for the same indebtedness thereby restoring the personal liability of certain of the defendants who assumed the payment of the original mortgage. Decree entered finding the equities in favor of the plaintiff, except as to the defendant S. N. Brooks, assignee of a second mortgage purchased by him subsequently to the release of the original ,mortgage and prior to the commencement of this action. Defendants Henry M. Elliott, Harry M. Elliott and F. N. Elliott alone appeal.—*Affirmed.*

*L. D. Teter* and *Norman R. Hays,* for appellants.

*W. H. Lyon* and *Mabry & Mabry,* for appellee.

DE GRAFF, J.—This is primarily an action to foreclose a real estate mortgage. A brief statement of the facts is necessary to understand the equities involved.

In May 1911 the plaintiff in consideration of $14,000 conveyed to Thomas Clarke her farm of 112 acres in Marion County, Iowa. This consideration was evidenced by a cash payment of $1,000 and a note and first mortgage on the land for $13,000. The indebtedness matured May 23, 1921 except $500 which was payable and was paid May 23, 1912. On September 27, 1915 Thomas Clarke conveyed the land to John Joseph. Clarke subject to the mortgage which the grantee assumed and agreed to pay. Thereafter John Joseph Clarke by written con-

1. MORTGAGES: release: when set aside.

tract sold and agreed to convey this land to the defendants Henry M. Elliott, Harry M. Elliott and F. N. Elliott who assumed and agreed to pay the mortgage then in the sum of $12,500. On February 28, 1920 a deed of conveyance was executed by John Joseph Clarke and wife to the defendant W. W. Welsher in conformity to the written contract of sale between the Elliotts and Welsher.

On March 4, 1920 a mortgage on this land for $5,000 was executed by Welsher to the Elliotts thereby securing a part of the purchase price of said farm on the sale from the Elliotts to Welsher. On May 24, 1920 Welsher executed a mortgage on the land for $12,500 to the plaintiff Elizabeth U. Cherry which mortgage was intended to be a substitution for the Thomas Clarke mortgage.

It is about and around the execution of this mortgage that the material issues focus and gravitate, and it is quite necessary at this point to leave the bare chronology of the case and to recite the facts and circumstances incident to the execution of that mortgage.

During the time· that the Elliotts were conducting negotiations to sell the farm to Welsher, and knowing that the mortgage thereon would mature May 23, 1921, they were desirous and anxious that the due date should be extended by the plaintiff mortgagee. With this end in view F. N. Elliott negotiated with the plaintiff to secure her consent to carry, not only the original Clarke mortgage of $12,500, but also an additional $5,000 mortgage representing a deferred payment from Welsher to the Elliotts. Plaintiff refused to consent to such arrangements, but she did consent to extend the Clarke mortgage for a period of five years on condition that the interest should be 6 per cent instead of 5 per cent per annum, and in the event the farm was again sold it would accelerate the entire mortgage and make it due and payable.

Shortly after this time plaintiff took the Clarke mortgage and note, and in company with Welsher went to a lawyer's office in Knoxville and the matter was submitted and legal advice was secured. At that time the attorney was told by plaintiff as she claims that her mortgage was a first mortgage on the land, and also that Mr. Welsher had made a second mortgage to

the Elliotts when he purchased the land from them.  Her sole purpose in seeking legal advice was to protect her interests in extending the time of payment of the Clarke mortgage and to continue that mortgage as a first lien, and that its priority should not be disturbed by the second mortgage held by the Elliotts.  A new note and mortgage were executed by Welsher and wife and delivered to the plaintiff with instructions from the attorney to file the new mortgage for record and to enter of record a release of the Clarke mortgage.  This she did and also returned the original note and mortgage to Thomas Clarke as instructed.

The conversations of the plaintiff with the Elliotts with respect to extending the Clarke mortgage happened before the Elliott mortgage was executed and before the Clarke mortgage matured.  Plaintiff was inexperienced in business and relied entirely upon the advice given her in this transaction.

The Elliott $5,000 mortgage was assigned to the defendant S. N. Brooks and recorded June 28, 1921.  The Elliott mortgage after the release of the Clarke mortgage became on the face of the record a first lien.

What do the defendants claim or deny with respect to the right of plaintiff to foreclose and to have her release of the Clarke mortgage canceled?

The Welshers defaulted.  The defendant Brooks claims to be a good faith purchaser of the Elliott mortgage and that his mortgage automatically became a first lien on said premises upon a release of the Clarke mortgage by the plaintiff.  The Elliotts plead that because the plaintiff released the Clarke mortgage of record and took a new mortgage and note from Welsher, who knew that the Clarke mortgage was still unpaid and was the identical debt represented by the Welsher mortgage, they are released from their obligation to pay the Clarke mortgage.  They also deny that the plaintiff is entitled to a foreclosure of her mortgage since upon the default of Welsher and themselves in the payment of interest, the plaintiff took a note and a chattel mortgage for the annual interest for which they defaulted.  To this latter plea the plaintiff alleges in reply that she took the interest note and chattel mortgage, not as a payment of the interest and not as a release of anyone from the mortgage obliga-

tion for interest due, but only as additional security therefor.

The equities on the issues presented go to the very heart and soul of the transaction. We shall not therefore attempt to differentiate between a mistake of law and of fact. It is apparent from the record that the Elliotts never considered their $5,000 mortgage as anything but a second mortgage until the plaintiff through a misunderstanding and by mistake had entered of record a release of the Thomas Clarke mortgage. Within a short time thereafter we find them making an assignment without recourse of this mortgage to the defendant Brooks. This happened before the plaintiff had discovered her mistake and had instituted action to have the matter corrected. The Elliotts well knew that if the second mortgage remained in their hands they would not be in a position to dispute that the lien of the plaintiff would be recognized as a first lien. They were as fully obligated as the original mortgagor, and unless it may be said that the indebtedness which they had assumed and agreed to pay has been discharged the mortgage lien is not released.

The lien of the mortgage is presumed to continue until the debt is paid even though a new note be given therefor. The debt must be satisfied, and even the taking of a new note which

2. MORTGAGES: lien: presumption.
includes an additional loan will not in the absence of an agreement to the contrary discharge the mortgage. It is elementary that if the original mortgage is released through mistake, it may be restored in equity and given its original priority, except as to subsequent purchasers for value and without notice. *Bruse v. Nelson,* 35 Iowa 157; *Port v. Robbins,* 35 Iowa 208; *St. Croix Lbr. Co. v. Davis,* 105 Iowa 27; *Sloan v. Rice,* 41 Iowa 465; *Shaver v. Williams,* 87 Ill. 469; *American Sav. Bank & Tr. Co. v. Helgesen,* 67 Wash. 572. The defendant Brooks was adjudged to be a prior and superior lien holder and properly so under the evidence.

This record however shows a release of an unsatisfied incumbrance, and the lien so released will be revived for the benefit of the party satisfying it. Justice and equity require that this should be done. When a person through misapprehension and mistake of the law parts with or surrenders a right of property which he would not have surrendered but for such misapprehension a court of equity will grant relief if it is

satisfied that the parties benefited by the mistake cannot in conscience retain the benefits or advantages so acquired. *Bottorff v. Lewis,* 121 Iowa 27; Kerr on Fraud & Mistake, 398, 418.

A court of equity will not permit a party to take and enjoy the benefits of ignorance or mistake of law on the part of another party who knew and who did not correct. *Faxon v. Baldwin,* 136 Iowa 519; 2 Pomeroy on Equity Jurisprudence (3d Ed.), Sections 721, 847.

We are abundantly satisfied that the plaintiff did not release Welsher or any other person from the obligation of the original mortgage and note, nor was it so intended nor within the contemplation of the parties that a new consideration was given or received and the old debt discharged. This is also true on the part of the plaintiff in accepting the interest note and chattel mortgage for the annual interest then due. It was simply taken as additional security to the real estate mortgage. Nothing was credited on the note and the transaction was between plaintiff and Welsher. Welsher does not dispute the claim of plaintiff and the Elliotts were not a party to the transaction.

3. MORTGAGES: satisfaction: taking additional security.

Briefly summarized it may be stated that the three Elliotts were under legal obligation to pay the plaintiff's mortgage and the plaintiff had a right to make the Elliotts defendants for the payment of the mortgage. The plaintiff could have maintained her personal action against any grantee of the mortgaged premises who assumed and agreed to pay the mortgage and without resorting to foreclosure proceedings and without joining the mortgagor as defendant. The only condition precedent was to invoke the power of a court of equity to restore her status as existing prior to the unintentional release of the primary and original obligation.

Furthermore the Elliotts were personally and directly interested in securing the extension of time of the original mortgage and at a time when they knew that this mortgage had priority over any mortgage to be taken from Welsher. It was apparent to them that as holders of a second mortgage their interest might be protected on foreclosure proceeding only by the full redemption of the premises, if sold.

To grant the plaintiff the prayer of her petition does not

put the Elliotts in any different situation than they were at the beginning.    There is a motive in this case that is not difficult to understand.    As one reads the record he unconsciously breathes the atmosphere of strategy.    Sufficient to state that the intent of the parties when the new mortgage was drawn and the old one released was not to create a new incumbrance, but merely to change the form of the old one.    Equity looks to the substance of the transaction rather than the mere form it assumes. Under the circumstances of this case it would be plainly inequitable to refuse to cancel the release of the first mortgage. The well recognized rules of equity jurisprudence find application.    As was said in the early days of chancery ''when the blush comes to the cheek of the chancellor'' his decree is ready to be entered.    The trial court correctly ruled the case and its judgment and decree is therefore—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.