LILLIE LEWIS ET AL., APPELLEES, v. LAWRENCE NEWELL ET AL.: ARTHUR PARKS, APPELLANT.

FILED APRIL 10, 1923. No. 22318.

**Equity:** MISTAKE OF FACT: RELIEF. Equity will grant relief from a mistake, as a mistake of fact, where parties are erroneously informed that one party has an interest in certain land by reason of marital relations, and contract with reference to such erroneous information, especially where the party jeopardized thereby can be relieved without substantial injustice to the other side, and the party to be benefited by the mistake invokes the aid of equity to put him in a position where the mistake will be of advantage to him.

APPEAL from the district court for Kearney county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

Lewis v. Newell.

C. P. Anderbery, for appellant.

J. L. McPheely and King & Bracken, contra.

Heard before MORRISSEY, C. J., ALDRICH and GOOD, JJ., BEGLEY and BUTTON, District Judges.

BEGLEY, District Judge.

In 1900 one Elias Kembel died intestate, seised in fee simple of the north half of the northeast quarter of section 17, township 6 north, of range 14, Kearney county, Nebraska, leaving surviving him the plaintiffs, Mary Parks, then Mary Kembel, his widow, Lillie Kembel, now Lillie Lewis, Fred H. Kembel, and Minnie Kembel, now Minnie Nelson. His estate was duly probated, and the county court found by decree that said plaintiffs were his widow and children and assigned said land to them as follows: Mary Kembel, now Mary Parks, the dower interest therein, and to the said children the fee title in undivided shares, subject to said dower interest. Mary Kembel thereafter married the defendant, Arthur Parks, and four children were born of this union.

In 1920 plaintiffs, through the efforts of defendant Newell, a real estate agent, sold the premises to defendant Christian Peterson for $200 an acre. The family was not living on the premises at this time, and some domestic trouble had arisen between Mr. and Mrs. Parks. He was working at McCook, and she, refusing to live there, was residing at Minden. Mr. Newell informed Mrs. Parks and the other plaintiffs that by reason of his marital relations Arthur Parks had some interest in the premises and it would be necessary for him to sign the deed in order to convey a good title. Plaintiffs had the utmost confidence in Mr. Newell, and, believing that Parks' signature was necessary to convey title, sent for him to come and sign the deed. Mr. Parks, believing that his signature was necessary on the conveyance, refused to sign unless he was paid the sum of $3,000 from the proceeds of the sale, and, unless same was paid to him, would refuse to allow said deal to be

consummated. Plaintiffs demurred to this payment, and he insisted, and both parties were again informed by Mr. Newell that the sale could not be consummated unless Mr. Parks signed the deed. Plaintiffs finally agreed to pay the $3,000 to Parks on his agreement that he would invest it in a permanent home for their mother, Mary Parks. The deed was executed and signed by plaintiffs and Arthur Parks and placed in escrow in the hands of defendant Newell with written instructions to Newell to deliver same to Peterson upon payment of the purchase price on March 1 following, and to distribute the purchase money among the plaintiffs in certain proportions, including the payment of $3,000 to Arthur Parks.

When March 1, 1921, arrived, defendant Parks informed plaintiffs that he did not intend to invest his money in a home for their mother, but intended using it to educate his children and buy an automobile to take a trip to Denver. Plaintiffs then consulted a lawyer and for the first time discovered that Parks had no interest in the property. They filed this suit after the purchaser, Peterson, had paid the money into the hands of Newell, but before the delivery of the deed to Peterson. In their petition they joined Parks, Newell, and Peterson as defendants, and prayed for an injunction preventing Newell and Peterson from paying the money to Parks, and enjoining Parks from receiving the $3,000, and asking for a decree finding that same belonged to the plaintiffs. Parks answered, admitting the ownership of plaintiffs in the land, but alleging that he had a certain interest therein by reason of an oral agreement entered into between the parties that he should be compensated for work and labor and improvements erected thereon, and asked that the contract be confirmed. Defendant Peterson filed no answer. Defendant Newell filed an answer alleging that he sold the land to Peterson as agent for plaintiffs, and that at said time, and that at the time the contract was made,

he believed it would be necessary for said Arthur Parks to join in said deed; that Peterson had paid him the purchase price for the land, which he then held, together with deed, subject to the orders of the court.

The court entered a decree finding for the plaintiffs; that the agreement to pay Parks the sum of $3,000 was without consideration and unenforceable, granted the injunction as prayed, and ordered distribution of the moneys to the plaintiffs. Defendant Arthur Parks has appealed.

The evidence is insufficient to support the defendant's claim of an oral agreement to reimburse him for work and labor and improvements erected on the premises, and the only question raised by appellant is that it was a mistake of law on plaintiffs' part in entering into the agreement, and therefore a court of equity is powerless to grant relief.

It must be conceded that ignorance of the law excuses no one and equity will not relieve against pure mistakes of law. However, a distinction is made as to ignorance of general law and ignorance of one's private legal rights under the law, arising out of existing facts. In the latter case, when shared by both parties to an agreement and resulting in a loss of the rights of one of them, the agreement may be set aside at the suit of the injured party, though no fraud was practiced upon him. 6 R. C. L. 630, sec. 48.

Here the mistake consisted in an error as to the interest owned by Arthur Parks. It was assumed as a matter of fact that he had an interest, and, though this was based on a mistake of law, it was nevertheless a fact. 13 C. J. 379, sec. 267; 2 Pomeroy Equity Jurisprudence (4th ed.) sec. 839; *Freichnecht v. Meyer,* 39 N. J. Eq. 551; *Healy v. Healy,* 76 N. H. 504; *State v. Paup,* 13 Ark. 129; *Stahl v. Schwartz,* 67 Wash. 25; *Baker v. Massey,* 50 Ia. 399.

The plaintiffs brought their action while the contract was executory. No consideration was received for their

promise. The subject-matter—Parks' interest in the land —had no existence. He is now here asking a court of equity to give him relief by enforcing an inequitable bargain.

That a rescission may be had for a mutual mistake as to the private rights of parties seems to be well settled. Some courts have put it upon the ground of failure of consideration for the promise. In others, that there was a mistake as to the subject-matter, but most courts upon the broad principle that justice and equity require such a rule. In this case there are such elements of absence of consideration, of reliance upon the representations of the real estate agent, of mutual mistake, and unconscionable advantage, as should in equity and in conscience take this case out of the general rule.

The judgment of the district court is therefore right, and is

AFFIRMED.