CHARLES TROYER et al., Appellants, v. T. W. CLARKEN et al., Appellees.

**BILLS AND NOTES:** Payment and Discharge—Novation. A promissory note will not be deemed discharged because of the subsequent execution, by a third party, of another note and mortgage for the same indebtedness, *unless the parties intended such a result.*

*Appeal from Wright District Court.*—G. D. THOMPSON, Judge.

MARCH 11, 1924.

REHEARING DENIED MAY 16, 1924.

ACTION in equity, wherein plaintiffs ask the cancellation and surrender of an $8,000 promissory note signed by them, now held by appellee Clarken, as he alleges, for a debt owed

to him by Mrs. Short, and transferred by her to him as security. He alleges, also, that there was no release of appellants from their obligation to pay the note in suit. Appellants contend that another note and mortgage for a like amount were given in lieu of this, and that there was a novation. The trial court found the equities with defendants; that defendants never intended to and did not agree to surrender the note in suit and accept in place thereof the note and mortgage given by Madsen and wife; that, in releasing the mortgage given by plaintiffs, defendants had no intention of surrendering said $8,000 note or of releasing either of the makers thereof from the obligation created by said note, but merely intended to release the mortgage executed by plaintiffs Troyer and Wiser and their wives, for the purpose of permitting new mortgages to be given in renewal of those already covering the land involved in the controversy. The petition was dismissed. Plaintiffs appeal.— *Affirmed.*

*Robert Healy* and *Birdsall, McGrath & Archerd,* for appellants.

*Mitchell & Files* and *Sylvester Flynn,* for appellees.

PRESTON, J.—In March, 1920, appellants purchased of Mrs. Short 160 acres of land belonging to her, and executed the note in suit in part payment of the purchase price. To secure the note, they gave a fourth mortgage on the premises so purchased. $7,500 was paid in cash, and as a part of the purchase price appellants assumed and agreed to pay three prior mortgages against the property, totaling $21,000, with interest. The first, second, and third mortgages were against the land when Mrs. Short bought it. The mortgage given by appellants to secure the $8,000 note provided that the grantee, Short, by the acceptance of the mortgage agreed, for heirs, assigns, etc., that grantee would release the mortgage at any time prior to September 1, 1921, for the purpose of allowing appellants, grantors, their assigns, etc., the right or privilege of placing a new first mortgage on said land, of not to exceed $21,000, the mortgage to remain subject thereto when rerecorded. The $8,000 mortgage

was released, and on November 10, 1921, two new mortgages totaling $21,500 were given. The $500 excess was for interest on plaintiffs' $21,000 obligations and the obligation of Madsen. After the satisfaction of the mortgage by Clarken, the question arose as to the execution of a mortgage to secure the $8,000 note given to Mrs. Short and assigned to Clarken. Blackwell made out a mortgage for $8,000 on the land, subject to $21,500, and this mortgage was executed by Madsen. The legal title to the land was then in Madsen. The papers were made out without consulting the Shorts. The thought was that the one who owned the land should execute the mortgage. The $8,000 mortgage was not rerecorded. Appellants sold the land to Madsen in March, 1921, who assumed and agreed to pay all of the prior mortgages, including the mortgage of $8,000 to Mrs. Short. About August, 1921, and at about the time of the maturity of the first mortgage, Blackwell notified the Shorts that they would have to sign a release according to the contract, to permit a renewal. Some of the instruments before referred to were made in the name of W. H. Short, when they should have been made to his wife. The matter was corrected by assignment. No transfer of the first $8,000 mortgage was actually made from Short to his wife, but, after the execution of the papers, the mortgage and the $8,000 note in suit were assigned to Clarken. The assignment to Clarken was to secure an indebtedness owed him by the Shorts in the sum of about $10,000 or $11,000. The Short mortgage of $8,000 had been assigned to Clarken in July, 1921. Thereafter, Clarken executed and caused to be recorded the release of the first $8,000 mortgage.

After the release of the first $8,000 mortgage and the giving of the new $21,500 mortgages, Madsen executed a note and mortgage for $8,000 to Short on the same property, which recites that it is subject to a mortgage of $12,000 and a second mortgage of $9,500 then on record. Mrs. Short, who is not a party to this suit, testified that she never saw the Madsen $8,000 note.

"Never had it in my hands or in my possession. In going to the bank and things of that kind, my husband looked after the business for me. I first heard of taking the Madsen note and turning back the Troyer and Wiser note when my husband

came back. I said I wouldn't accept of it. He told me he left Troyer and Wiser's names off of those notes, and made it Madsen, and I said, 'I won't accept it.' He didn't say anything about turning back the Troyer and Wiser note. Nobody ever asked me to release the indebtedness of Troyer and Wiser to me for the purchase price of my land. I never at any time in any way consented to release Troyer and Wiser from that indebtedness; never at any time told my husband or anybody else to release the Troyer and Wiser note. The mortgage given by Madsen and assigned by me to Clarken was additional security to that $8,000 Troyer and Wiser note."

After Mrs. Short refused to take the Madsen note in place of appellants' note, her husband consulted an attorney. At that time, appellants' note was held by Mrs. Short. The Madsen mortgage for $8,000 was assigned to Clarken, in lieu of the Troyer and Wiser mortgage, which had been satisfied, and the Madsen note was kept by Short until he tendered it back, at Blackwell's bank, the same bank from which he received it. The Madsen $8,000 note was brought into court and tendered to whomsoever the court might find entitled to it.

There is evidence that the Madsen $8,000 note and mortgage were not considered good.

In November, 1923, appellee Clarken wrote Troyer and wife that he held the note in suit; that the note was secured by mortgage, but that the mortgage was released for the purpose of renewing the first mortgage, and that a new note and mortgage was executed to him by Madsen; that there are now foreclosure proceedings against Madsen, "which renders his note worthless, and I will therefore look to you for payment of the above note and interest."

It is claimed by appellants that, after Madsen executed the $8,000 mortgage, Short promised to obtain the $8,000 note in controversy in this action, in the possession of Clarken, and return it to plaintiffs. But evidence on behalf of defendants, and we think the weight of it, is that plaintiffs did not, either before or after the execution of the Madsen note and mortgage, demand the return of plaintiffs' $8,000 note from Mrs. Short, her husband, or Blackwell, who assisted in the transactions.

Clarken testifies that the Madsen $8,000 mortgage was a

fourth mortgage on that piece of land, and that, in accepting the collateral, he relied on the notes, and that no part of the note in suit has ever been paid to him. There is no claim that it was ever paid to Mrs. Short in money.

It is contended by appellants that the release of a mortgage is prima-facie evidence of the payment of a debt secured thereby. This may be so, if nothing else appears. It is also claimed by appellants that the note in controversy, or the mortgage securing it, was paid because the mortgage was renewed by Madsen's mortgage; that it was paid by Madsen's mortgage. A renewal would not necessarily constitute payment, unless it was so intended. Appellants seem to rely most strongly upon a sentence in the testimony of Mrs. Short that "it was paid by Mr. Madsen's mortgage. It wasn't paid in full to me." This appears in the cross-examination of Mrs. Short.

"Q. You wanted to have the records of this county show the cancellation and discharge of the Wiser and Troyer *mortgage,* didn't you? A. Yes, sir. Q. You wanted the world to believe and rely upon what the records of this county would show, that that Troyer and Wiser mortgage was canceled, and paid in full, didn't you? A. The mortgage was renewed by Madsen's mortgage.

"Appellants' attorney: I move to strike the answer of the witness, as not responsive.

"Appellees' attorney: We object to the question as immaterial for any purpose in this case.

"Q. What is your answer? A. It was paid by Mr. Madsen's mortgage. It wasn't paid in full to me. Q. You did accept and receive and assign to Clarken the Madsen *mortgage,* didn't you? A. Yes, sir."

We think that the meaning of the witness is not as broad as contended for by appellants. The witness was referring all the way through to the release of the *mortgage,* except that in one question was included the thought of the payment of the mortgage. We think that the witness did not mean to say that the note or the debt had been paid. She had already testified specifically that none of the principal of the Troyer and Wiser $8,000 *note* had ever been paid to her; that she had never been asked to release the indebtedness of appellants to her for the

purchase price of her land; that she never consented to release them, and was never asked to do so. There is other evidence on this point, which we shall not stop to set out. Considering all the evidence and the purpose for which the mortgage was released, we think it cannot justly be said that the note in controversy has been paid or in any way canceled. Had the principal debt from the Shorts to Clarken been paid, a different question might arise. Without reciting all the evidence, or again referring to that before set out, we think it is not shown by the record that the Madsen $8,000 note and mortgage were taken in lieu of the note sought to be canceled. We think it is shown that such is not the fact, and that there was no intention that the Madsen note and mortgage were taken in lieu of this note.

Appellants contend that the rule announced in *Greenwald v. Metcalf, G. & Co.*, 28 Iowa 363, is decisive of this case. From an examination of that case, it appears that the question was in regard to conversion of collateral by the holder, who was liable to account to the maker. We do not find any reference to conversion in the petition herein. The substance of the allegations of the petition is that the new $8,000 note and mortgage were accepted by Short and Clarken in lieu of the note and mortgage of these plaintiffs, held by Clarken, and that the note has been fully satisfied, and a cancellation and return of the first note are asked. Other cases are cited, to the point that equity will not, in the absence of fraud, etc., reinstate a canceled mortgage or re-establish a canceled debt, and so on. We think the cases cited do not meet the situation presented by the pleadings and the evidence.

We are of opinion that the questions presented are so largely of fact that we shall not discuss the cases in detail, but content ourselves with referring to the points and cases cited. Some of the facts are not in dispute. Appellees' contention is that the essentials of a novation are a mutual agreement between a debtor, his creditor, and a third person, by which such third person agrees to be substituted for such debtor, and the creditor assents thereto, extinguishing the obligation of the debtor to the creditor, and creating one in place thereof, of the third person to the creditor; and that there must be a valid obligation to be

discharged, a consent of all three parties to the substitution, a sufficient consideration, the extinction of the old obligation, and the creation of a valid enforcible new obligation (*Kirchman v. Standard Coal Co.*, 112 Iowa 668, 673; *Park v. Best*, 176 Iowa 7, 15; *Sawyer v. Hawthorne*, 167 Iowa 410, 417; *Watt v. German Sav. Bank*, 183 Iowa 346, 357; *Michigan Stove Co. v. Walker & Co.*, 150 Iowa 363, 368; and other cases); further, that, in the absence of an agreement to the contrary, the taking of a new note for one secured by a mortgage does not discharge the indebtedness, and the mortgage is presumed to continue until the debt is paid (*Bottorff v. Lewis*, 121 Iowa 27, 35; *Cherry v. Welsher*, 195 Iowa 640); that the lien of a mortgage is not defeated by partial payment and the substitution of a new note (*Gribben v. Clement*, 141 Iowa 144, 148; *Cherry v. Welsher*, supra); and that, as a rule, it is the performance of an agreement, and not the mere promise, which amounts to a satisfaction of the debt (*Sawyer v. Hawthorne*, supra, and other cases).

Without further discussion, we are of opinion that the decree of the trial court was right. It is, therefore,—*Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.