PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT, V. HENRY J. NUERNBERGER ET AL.: F. H. ROOST, ADMINISTRATOR, ET AL., APPELLEES.

284 N. W. 266

FILED FEBRUARY 17, 1939. No. 30442.

*Sidney T. Frum* and *Quintard Joyner,* for appellant.

*W. V. Steuteville* and *S. W. McKinley, Jr., contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

SIMMONS, C. J.

The problems presented in this case arise from the following facts:

In 1923 Henry J. Nuernberger and Louis Roost were the owners, as tenants in common, of a quarter-section of land in Dakota county, and at that time mortgaged the land to the plaintiff to secure an indebtedness evidenced by a promissory note of $8,000 running for a period of five years, with interest at 5 per cent. per annum.

Louis Roost died in 1926, leaving a last will and testament that was duly admitted to probate. The material provisions of that will are as follows:

"Item 1. It is my will that all my just debts and expenses of my last sickness, death and burial be first paid out of my estate.

"Item 2. I hereby give, devise and bequeath unto my wife, Annie Roost, if she survive me, all my household furniture and all the personal effects contained in my home, not including however, any money or evidences of debt that may be in my home at the time of my death.

"Item 3. I hereby give, devise and bequeath unto my said wife, Annie Roost, if she survive me, the home which I now occupy, and the lots on which the same is situated to wit: Lots 9, 10, and 11, in Block 20 Moan's Addition to South Sioux City, Nebraska.

"Item 4. I hereby give, devise and bequeath to my said wife, Annie Roost, the use, rents and income for the term of her natural life of all the property which I shall hereinafter bequeath in items 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14, meaning hereby that none of the property which I hereinafter bequeath to the devisees named in items 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14, shall pass to such devisees, respectively until the death of my said wife, and it is further my will in case the other property which I devise to my said wife, together with the use, rents and income from the property mentioned in the aforesaid items, shall at any time prove insufficient to properly support and care for my said wife, that she shall have the right to draw upon and use the principal of the bequests named in said items to such extent as may be necessary for her proper care and support."

In item 5 he devises certain real estate (not that involved in this action) to a nephew "subject however, to the use, rents and incomes thereof and other possible reservations mentioned and preserved to my wife in item 4 above."

"Item 6. I hereby give, devise and bequeath unto my nephew, Louis Roost, son of Frederick Roost, of Klein-Wootz, by Lenzen on the Elbe Province of Brandenburg, Germany, the sum of Three Thousand ($3,000) Dollars, subject, however, to the use and income thereof and other possible reservations mentioned and reserved to my wife in item 4 above."

Items 7 to 14, inclusive, in language similar to that of item 6, contain bequests totaling $11,000 to other named

beneficiaries, subject to the same condition as set out in items 5 and 6.

"Item 15. All the rest, residue and remainder of my property of every kind and nature not hereinbefore devised or bequeathed, I hereby give, devise and bequeath unto my said wife, Annie Roost."

In the probate proceedings, the executors of his estate reported on June 18, 1927, that they had no cash on hand; that they had a certain real estate mortgage for $10,500 and a certain contract for the sale of real estate, upon which there was a balance owing of $11,000; that there was no other personal property; that there were "certain cash bequests amounting to approximately $14,000, which are to take effect only after the death of the surviving widow, Anna Roost. That said Anna Roost is to have the use, rents and income from all of said bequests, including all the land of the deceased, during her lifetime. * * * That under the terms of the will the said Anna Roost is the residuary legatee after the payment of the cash bequests." The executors prayed that they be authorized to assign and deliver the said contract and mortgage to Anna Roost "under such terms and conditions as the court may fix;" and stated that it was their opinion that the said contract and mortgage should be assigned to her "as trustee under the will of Louis Roost, deceased, so that she can continue to draw the rents out and income therefrom, during her lifetime, and that the same may be preserved or such part of it as may be necessary for distribution to the several devisees named in the will." The contract and $10,500 mortgage were assigned, under orders of the court, to Anna Roost, "as trustee." In January, 1928, the executors were discharged.

In 1928 Nuernberger and Anna Roost made application for an extension of the 1923 mortgage, reciting in the application that they were the owners of the land.

At that time plaintiff had the abstract of title extended, and the probate proceedings in the Louis Roost estate were shown. Plaintiff's attorney then examined the abstract and

found "that at the time of the execution of said extension agreement the title to said premises was good in *fee simple* in Henry J. Nuernberger and Anna E. Nuernberger, his wife, and Anna Roost, widow."

In 1933 Nuernberger and Anna Roost again applied for renewal of this mortgage, reciting ownership of the land, and executed a new note to the plaintiff for $8,000, payable $200 each year beginning March 1, 1934, and $7,200 payable March 1, 1938, with interest at 5½ per cent., secured by a mortgage on said premises which was executed on June 15, 1933, and recorded at that time. The abstract of title was then brought down to date and examined by plaintiff's attorney, who said in his opinion "A good, marketable and indefeasible title in *fee simple* was vested in Henry J. Nuernberger and Anna Roost at the time said mortgage was executed and recorded," and that the mortgage dated March 1, 1933, "is a valid lien and the first encumbrance of record against said premises," subject to the mortgage of January 31, 1923, and "that there are no liens which have been subordinated" to the mortgage of January 31, 1923.

Following that, the 1923 mortgage was released of record by the plaintiff, and the evidence of indebtedness secured thereby was marked paid and was delivered to Nuernberger.

Anna Roost died in 1935. Her estate was duly probated, and notice to creditors given. The plaintiff did not file a claim in the Anna Roost estate. Following her death, F. H. Roost was appointed administrator *de bonis non* with the will annexed of the estate of Louis Roost, deceased.

As such administrator, he reported receipt of $5,000 Federal Land Bank bonds, which he had sold for $5,138; that from these funds, under orders of the court, he made payments to the specific beneficiaries, leaving a balance due them of $9,100; that he received no other personal property; that he received possession of one-hundred twenty-five acres of farm land near Ponca, and a half interest in a farm north of Emerson, that half interest being the

land involved in this controversy. It appears that the $5,000 of bonds was the remainder of a settlement of $7,500 which Mrs. Roost had made on the $10,500 mortgage, which had been assigned and delivered to her; and that the land near Ponca was the land that had been sold by Louis Roost under the contract hereinbefore referred to, which had been surrendered to her, encumbered with delinquent taxes, because of the default of the purchaser.

In December, 1936, plaintiff filed its petition in this action, asking for foreclosure of its 1933 mortgage, and subsequently filed an amended petition bringing in other parties, and joining the land as a party. Thereupon, F. H. Roost, as administrator of the estate of Louis Roost, filed an answer, alleging the ownership of Louis Roost in this property at the time of his death, his will, the special bequests, that the wife had a life estate in said premises and a residuary estate subject to the charge of said bequests, that 30 per cent. of the special bequests had been paid; that the unpaid bequests were liens prior to the plaintiff's mortgage, and prayed for either a dismissal of the action, or that, if the real estate were sold, one-half of the proceeds should be paid to the administrator to apply so far as necessary to the payment of the special bequests.

Thereupon the plaintiff filed its second amended petition, making the beneficiaries of the wills of Louis Roost and Anna Roost parties; set up its 1923 note and mortgage; alleged the death and the will of Louis Roost, execution of the 1933 note and mortgage; that the Nuernbergers and Anna Roost were the owners of the property; that it relied upon the statements in the applications; that it believed that the special legacies had been paid; that it believed that the mortgagors had a good title; that property was assigned to Anna Roost sufficient to pay these special bequests; alleged laches and estoppel on the part of the defendants; prayed for a foreclosure of its 1933 mortgage, or, in the alternative, if that was found not to give a valid lien upon the entire property, that the release and cancelation of the 1923 mortgage be set aside, and that mortgage

be reinstated; that it be subrogated to its former rights under the 1923 mortgage, and that the 1923 mortgage be foreclosed. Plaintiff prayed for equitable relief.

Those who were given the special bequests under the Louis Roost will answered; set up their rights; alleged that they had not been fully paid; that the plaintiff received a new consideration for its 1933 mortgage in the personal liability of Anna Roost, the increase in the interest rate, the payment of interest and taxes; and pleaded laches.

The trial court found that Anna Roost owned a life estate in this land and a contingent interest therein as residuary legatee after the payment of the specific bequests; that the estate was not sufficient to pay all of the bequests; that plaintiff made no effort to collect its indebtedness from the Anna Roost estate; that plaintiff received a consideration for the new mortgage not included in the original note and mortgage, to wit: The personal liability of Anna Roost, an increase in the interest rate, and collections of interest under the new note and mortgage; that plaintiff released its 1923 mortgage with full knowledge of all facts, and with full knowledge that the bequests had not been paid; that plaintiff's mistake was one of law and not of fact; that there remained unpaid $9,100 in specific bequests; that there were not sufficient assets without this land to pay the special bequests. The court denied the reinstatement and foreclosure of the 1923 mortgage; found that plaintiff had a first lien upon the undivided half interest belonging to Nuernberger, and a lien upon the one-half Roost interest, subject to the payment of legacies due under the Louis Roost will; rendered a decree against Nuernberger for the full amount due; and ordered a sale of his undivided one-half interest.

From that decree, the plaintiff appeals. In this appeal Nuernberger is not a party, and his interest in the land is not involved.

Did Anna Roost have the power to convey by mortgage the undivided one-half interest in this property free from, or superior to, the claims of the defendants for the pay-

ment of their special bequests? The answer to that question depends upon a construction of the will of Louis Roost.

"The court in construing a will must first ascertain the intent and purpose of testator as disclosed by the language of the will and then give effect thereto if not contrary to law. Section 76-109, Comp. St. 1929, requires such construction." *In re Estate of Hunter,* 132 Neb. 454, 272 N. W. 318. See *In re Estate of Mooney,* 131 Neb. 52, 267 N. W. 196.

"Where the intent of the testator is clear from the terms of his will, courts will unhesitatingly give full force and effect to such intent." *Seybert v. Seybert,* 118 Neb. 246, 224 N. W. 1.

"In determining the meaning of particular parts, the intention of the testator is to be determined from the will as a whole." 69 C. J. 104.

Applying these principles to the Louis Roost will, we reach the following conclusions: Louis Roost in his will made certain specific devises and bequests: First, certain personal property to his wife; second, the home place to the wife; third, a piece of land and specific cash bequests to named parties, subject to a life estate and certain granted powers to the wife; fourth, the residue to the wife.

His wife, Anna Roost, is given a *life estate* in the property described in items 4 to 14, inclusive, together with the powers therein set out. She is given an estate *in fee* in "all the rest, residue and remainder of my property of every kind and nature not hereinbefore devised or bequeathed." See Comp. St. 1929, sec. 30-202.

The undivided one-half interest in the land involved in this action was not "hereinbefore devised or bequeathed." It follows that it is not included in the devise of the life estate, or affected by the powers granted to the widow in item 4 of the will.

Certain cash legacies totaling $14,000 are provided in items 6 to 14.

"When pecuniary legacies are given in the will and there is a gift of the residue, both real and personal, the residue

being blended in one mass, the presumption arises that the testator intended to charge the entire residuary estate with the payment of the legacies, for the reason that, in such case, the residue can only mean what remains after satisfying the previous gifts." *In re Estate of Strolberg,* 106 Neb. 173, 183 N. W. 97.

It follows that under the will of Louis Roost, his widow, Anna Roost, received under item 15 of the will a devise in fee of the property involved in this action, and also a bequest of the $10,500 note and mortgage and the $11,000 contract of sale, charged with the payment of the legacies set out in items 6 to 14 of said will.

It further follows that Anna Roost had the right to mortgage said premises to the plaintiff, conveying her fee title therein, which was subject, however, to a charge for the payment of said legacies. Plaintiff's lien on said premises by virtue of its 1933 mortgage was subject to that charge.

Should the release of plaintiff's mortgage of 1923 be vacated and set aside, the lien of said mortgage revived and reestablished as a valid lien upon said undivided one-half interest formerly owned by Louis Roost, and the said lien, as so revived, be foreclosed?

The right of the beneficiaries to have this property applied to the payment of their legacies is derived from the will of Louis Roost. Their rights cannot be greater than his. At the time of the death of Louis Roost, his interest in the land was charged with the payment of this indebtedness. It is a "just debt" which his will ordered to be paid. Without that provision in the will, the law would require payment thereof. This indebtedness, therefore, was an obligation both under the will and by the lien of the 1923 mortgage superior to the rights received by the beneficiaries under the Louis Roost will. To grant the plaintiff the equitable relief prayed for will leave the defendants in the same position that they would have been in had the renewal mortgage not been executed and the original mortgage not been released. The beneficiaries have not

changed their position as a result of the renewal of this mortgage. They will not be deprived of any property rights given them under the will if the lien of the 1923 mortgage is reinstated.

No consideration passed from the Louis Roost estate, or any of the defendant beneficiaries, to the plaintiff for the renewal and release of the prior mortgage. The plaintiff's attorneys in 1928 and 1933 construed the provisions of the will correctly in holding that Anna Roost had a fee simple title to this property, subject to the lien of the 1923 mortgage. The attorneys made no reference in their opinions to the legacies. Their mistake appears to have been in finding that the legacies had either been paid, or payment secured by the assignment of personal property to the widow to be held in trust for the satisfaction of these legacies.

This mistake on the part of plaintiff's attorneys resulted in the plaintiff's releasing the 1923 mortgage and canceling the evidence of indebtedness secured thereby. The mistake was mutual as to plaintiff, Nuernberger, and Anna Roost.

The fact that the plaintiff filed no contingent claims in either the estate of Louis Roost or Anna Roost shows that plaintiff was looking to this land for payment. Plaintiff did not try to reach the other assets of either estate, or involve those assets in litigation or controversy to secure the payment of this indebtedness.

Legacies are payable first out of the personal estate of the testator. *In re Estate of Strolberg*, 106 Neb. 173, 183 N. W. 97. If there is not sufficient personal estate remaining to pay those legacies, it is due in part to the fact that the beneficiaries did not take any steps to preserve the principal of that estate.

The fact that collateral of the face value of $21,500 was assigned by the court to Anna Roost so that the same might be "preserved for distribution to the several devisees named in the will" might explain the opinion given by plaintiff's attorneys.

The parties intended the 1933 mortgage to be a renewal of the 1923 mortgage securing the payment of the original

indebtedness. In *Peoples Bank v. Trowbridge,* 123 Neb. 312, 242 N. W. 647, this court approved the following statement of law, which we quote from 41 C. J. 582:

"Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, is not an extinguishment of the mortgage, but a renewal thereof, and does not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially where it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage."

Defendants raise the proposition that there was a change in the interest rate; that the plaintiff collected interest at the higher rate, and that that prevents the revival of the lien of the original mortgage.

"It may be conceded that an agreement for the payment of a higher rate of interest during extension is invalid as against a junior lienor in so far as it impairs the latter's security. * * * It is a very different thing to assert that such an agreement enhances the right of a junior lienor." *Barbano v. Central-Hudson Steamboat Co.,* 47 Fed. (2d) 160.

That proposition was presented in the case of *Lomas & Nettleton Co. v. Isacs,* 101 Conn. 614, 127 Atl. 6, wherein the court stated: "It is of course obvious that an extension of the loan would involve a change in the maturity dates of the note, and a change in the rate of interest *does not change the identity of the debt."* (Italics ours.)

In *Cherry v. Welsher,* 195 Ia. 640, 192 N. W. 149, the court held: "The lien of the mortgage is presumed to continue until the debt is paid even though a new note be given therefor. The debt must be satisfied, and even the taking of a new note which includes an additional loan will not in the absence of an agreement to the contrary discharge the mortgage. It is elementary that, if the original mortgage is released through mistake, it may be restored in equity

and given its original priority, except as to subsequent purchasers for value and without notice."

Has an equity court the power to grant relief from the mistake of a plaintiff made under the circumstances of this case?

Pomeroy in his Equity Jurisprudence discusses the power of equity courts in matters of this kind and states:

Section 849. "I therefore venture to formulate the following general rule as being eminently just and based on principle, and furnishing a simple criterion defining the extent of the jurisdiction. * * *

"Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal *status*, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

Section 853. "All mistakes of fact in agreements executed or executory, express or implied, must be concerning either the subject-matter or the terms. In the first case, the terms are stated according to the intent of both the parties, but there is an error of one or both in respect of the thing to which these terms apply,—its identity, situation, boundaries, *title*, amount, value, and the like." 2 Pomeroy, Equity Jurisprudence (4th ed.) secs. 849 to 854.

The case of *Peterson v. First Nat. Bank,* 162 Minn. 369, 203 N. W. 53, involved the power of an equity court to grant relief from the result of a serious blunder made by a lawyer in the foreclosure of a mortgage. In the body of the opinion the court said:

"The idea that equity has no relief from mistakes of law had its origin in the almost humorous and wholly supposititious presumption that all know the law—a proposi-

tion contrary to both law and sense. There has been misuse also of the rule that ignorance of the law excuses no. one. There is such a rule, but it goes only to the extent of making legal duty inescapable because of the subject's ignorance of the law. Neither in letter, spirit, nor purpose does it justify or even suggest that a loss should be imposed on one and an unconscionable gain permitted another merely because of the former's ignorance of law."

In that case the syllabus is: "In considering the competency of equity to relief against mistake, it is not controlling that the initial error is one of law rather than fact. It is not so much the genesis of the error as it is its unintended and unconscionable effect upon legal rights and obligations that makes a cause for relief."

This court in *Lewis v. Newell*, 110 Neb. 142, 193 N. W. 105, states: "It must be conceded that ignorance of the law excuses no one and equity will not relieve against pure mistakes of law. However, a distinction is made as to ignorance of general law and ignorance of one's private legal rights under the law, arising out of existing facts. In the latter case, when shared by both parties to an agreement and resulting in a loss of the rights of one of them, the agreement may be set aside at the suit of the injured party, though no fraud was practiced upon him. 6 R. C. L. 630, sec. 48."

The decision of this court in *Farrell v. Bouck*, 72 Neb. 875, 101 N. W. 1018, indicates that it is something more than slight negligence on the part of a mistaken party that would prevent an equity court from granting relief. In that case, the expression "culpable inertness" is used.

In *Cherry v. Welsher, supra,* the court said:

"This record however shows a release of an unsatisfied encumbrance, and the lien so released will be revived for the benefit of the party satisfying it. Justice and equity require that this should be done. When a person through misapprehension and mistake of the law parts with or surrenders a right of property which he would not have surrendered but for such misapprehension a court of equity will grant relief if it is satisfied that the parties benefited

by the mistake cannot in conscience retain the benefits or advantages so acquired. * * *

"Equity looks to the substance of the transaction rather than the mere form it assumes."

An equity court has the power and the duty, under the circumstances of this case, to grant the relief prayed for by the plaintiff.

Therefore the case is remanded to the trial court with instructions as follows:

(1) To enter a decree canceling the release of the 1923 mortgage and reinstating the lien of the same upon the undivided one-half interest in this property, formerly owned by Louis Roost, and which, under the will, passed to Anna Roost as residuary devisee.

(2) That an accounting be had as to the amount due on the 1923 note under the terms and conditions of that note and mortgage, giving full credit for all payments of either principal or interest made to the plaintiff by either Nuernberger or Louis or Anna Roost; that there be deducted from the amount so found due the amount of payments made by Nuernberger and Anna Roost as commissions, renewal fees, and other expenses connected with the execution of the 1933 mortgage, and that the one-half part of the amount so determined be decreed to be a lien upon said undivided one-half interest, based upon, and with the priority of, the 1923 reinstated mortgage.

(3) That if said undivided one-half interest be not redeemed from said decree, that it be sold as by law provided to satisfy said decree.

(4) That upon the payment of one-half of the amount of the decree rendered in the district court against the defendant Nuernberger, either by redemption or sale, that decree be held to be fully satisfied.

(5) To enter such further order or orders as may be necessary in the premises.

By so providing, there will be but one recovery in this action for the plaintiff, and justice and equity will be done in the premises. Should there be sales of either or both of

these undivided interests and a surplus remaining after the payment of either decree, the trial court, upon confirmation, shall order the payment thereof to the party or parties entitled thereto.

The litigation in this matter, so far as these appellee defendants are concerned, has been caused by the mistake of the plaintiff. Therefore the trial court shall enter its decree, taxing costs as follows: (1) The costs of this action in the trial court incurred by the defendant administrator and defendant beneficiaries shall be taxed to the plaintiff; (2) all other costs already incurred in the trial court shall be taxed as a part of the costs of the case, chargeable one-half against each interest in the property; (3) the costs of this action in this court are taxed to the plaintiff; (4) the costs in this action hereafter shall be taxed as a part of the costs of the case, chargeable one-half against each interest in the property. In the event of a sale under orders of the court, the costs so charged shall be paid first out of the proceeds of the sale, before distribution thereof is made as provided above.

REVERSED.