IN RE ESTATE OF FRANK L. MOONEY.
JAMES B. MCDONALD, ADMINISTRATOR, ET AL., APPELLANTS,
V. WILLIAM HORTON MUNGER, GUARDIAN, APPELLEE.

FILED MAY 19, 1936. No. 29664.

*Beeler, Crosby & Baskins,* for appellants.

*Halligan, Beatty & Halligan, E. H. Evans* and *Urban Simon, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and FITZGERALD, District Judge.

DAY, J.

This court is asked to construe the will of Frank L. Mooney, deceased. The application was originally made in the county court to vacate the final decree entered in 1932 and to construe the will. The decree was vacated, and a new final decree was entered construing the will. Upon appeal, the district court held that it was unnecessary to vacate the decree to construe the will and proceeded in its decree to place a construction on the will which was different from that of the county court. The grounds alleged for the vacation of the decree were that it was procured by fraud and unavoidable casualty.

The first question for the determination of this court is the proper construction of the will of Frank L. Mooney, deceased. Frank L. Mooney was for many years a prominent banker of North Platte. His wife, Callie McDonald Mooney, had died many years before. He had an only son, Frank A. Mooney, who had been an incompetent for several years before his father's death. Frank A. Mooney had inherited over $100,000 from his maternal grandfather's estate. The appellants in this case are his

two uncles and an aunt, brothers and sister of his mother. Grace Elizabeth Mooney and Brenton David Mooney are his aunt and uncle, the sister and brother of his father. These uncles and aunts are the heirs of Frank A. Mooney, deceased. This was substantially the situation as to family relationships that existed in 1928 when Frank L. Mooney, deceased, executed his will.

This will, after making several specific bequests, which are not material to the issues here, provided in the sixth and seventh paragraphs as follows:

"Sixth: I hereby appoint my sister, Grace Elizabeth Mooney, and my friend, William Horton Munger, executors and trustees of this my last will and testament, with powers and duties hereinafter set forth.

"Seventh: My beloved son, Frank Alfred Mooney, is at this time afflicted with a mental disorder which makes it necessary to have a guardian appointed for him and I am now his legally appointed and acting guardian. He has a considerable estate of his own inherited from his grandfather, Charles McDonald, the income from which is sufficient to maintain him in comfort. I sincerely hope that he will recover from his mental ailment in the near future and prior to my death, but in the event that he does not so recover, I desire that my friend, in whom I impose special trust and confidence, William Horton Munger, be appointed guardian for him and I direct that no part of my estate be delivered to him for ten years after my death, unless for some reason, now unforeseen, his own estate should be insufficient to maintain him, and in the event that he recovers I desire that Two Thousand ($2,000) Dollars, per year, be paid him from my estate each and every year after the said period of ten years from and after my death. In the event that my beloved son, Frank Alfred Mooney, should depart this life before myself, then and in that event I devise and bequeath all the rest and residue of my property to my beloved sister, Grace Elizabeth Mooney, and my beloved brother, Brenton David Mooney."

It is the construction of paragraph seven of Frank L. Mooney's will which concerns us here. Upon the death of Frank L. Mooney, his will was offered for and admitted to probate in the probate court of Lincoln county, Nebraska. All of the usual, regular and necessary procedure in the probating of this will was carried out, and on August 6, 1932, William Horton Munger and Grace Elizabeth Mooney, executors under the will of Frank L. Mooney, filed their final account, petition for final settlement of the estate, and decree of distribution, in which petition it was set forth that it was necessary that the court, upon final settlement of the estate, interpret and construe said will.

Thereafter an order was entered by the court fixing the time of hearing on the petition for final account and the application for the construction of the will. Legal notice of said hearing was given. Upon the hearing, the county court entered a final decree and construed the will. This decree was vacated in this proceeding and another and different decree entered. Upon appeal, the district court entered a decree construing the will. These various decrees are too long to incorporate in this opinion. It will be sufficient to state that the decree of the district court construed the will substantially as did the first decree of the county court.

By the process of elimination, the matter of construing the will can be simplified. The last provision, "In the event that my beloved son, Frank Alfred Mooney, should depart this life before myself," etc., never became operative because that eventuality never occurred. Likewise, the incompetent son never recovered from his mental ailment, so that the provision for the payment of $2,000 per year can never become operative. The income from Frank A. Mooney's estate was never insufficient to maintain the son. So that none of the situations provided for by the will ever arose. But the circumstance which did occur, that is, the death of Frank A. Mooney, was not specifically contemplated and directly provided for by the will.

There are certain fundamental rules for the construction

of wills, which are so well established that they are no longer debatable in this state. One is that the court in construing a will must ascertain the intent and purpose of the testator as disclosed by the language of the will. Comp. St. 1929, sec. 76-109; *Nebraska Nat. Bank v. Bayer,* 123 Neb. 391, 243 N. W. 115. When the intention of the testator is ascertained, it must be given effect, if not contrary to law or public policy. *St. James Orphan Asylum v. Shelby,* 60 Neb. 796, 84 N. W. 273; *Heywood v. Heywood,* 92 Neb. 72, 137 N. W. 984; *Luenenborg v. Luenenborg,* 128 Neb. 624, 259 N. W. 649.

The testator's intention must be determined from the language of the will in connection with attendant circumstances. *Lesiur v. Sipherd,* 84 Neb. 296, 121 N. W. 104. With these well-established elementary rules of construction in mind, a consideration of the language of this will, in connection with the surrounding circumstances, will enable us to determine the real intent and purpose of the testator. When the will was executed, and there was no substantial change in the situation of testator and his family relationships prior to his death, Frank L. Mooney had been for many years a widower with one son, who had become an incompetent. His sister lived with him, kept his house, and took the place of a mother to his incompetent son. The son had a substantial estate, apparently sufficient to care for him, which he had inherited from his maternal grandfather. The testator obviously did not intend to vest the title to any part of his estate in his incompetent son. The language of paragraph seven negatives any such purpose. There is, for instance, the provision that no part of the estate is to be delivered to him for ten years, "unless for some reason, now unforeseen, his own estate should be insufficient to maintain him." But in case the boy recovered, he was not to get the estate, but after ten years was to be paid $2,000 per year. From the language of the will, in connection with the circumstances of the son's incompetence, it is evident that Frank L. Mooney did not intend to bequeath to the son the title

to his estate while that son lived. It is equally clear that, in case the son did not recover from his mental ailment, the testator's intention was that he should never get any part of the estate except maintenance, in case the son's personal estate was insufficient to care for him.

It does not appear reasonable, therefore, that Frank L. Mooney intended that his son should under no circumstances come into possession of the property during his life, but that upon his death the title should vest in him for the purpose of distribution to his heirs at law. The language of the will does not support any such fantastic construction.

It is argued that, since the will did not provide for the disposition of the property in the event of the son's death, Frank L. Mooney died intestate as to the residue of his estate which he left for the benefit of his son. In support of this contention, several cases are cited to the effect that, where a will leaves a part of the property undisposed of, such property passes to legal heirs by virtue of the law of inheritance. *McCollum v. McCollum,* 108 Neb. 82, 187 N. W. 783; *Metzger v. Metzger,* 108 Neb. 613, 188 N. W. 229; *In re Estate of Koller,* 116 Neb. 764, 219 N. W. 4; *Heilman v. Reitz,* 89 Neb. 422, 131 N. W. 909. But the circumstances in none of these cases is similar or analogous to the situation here. These cases undoubtedly state the rule of law in this state applicable where a part of the estate is not disposed of by will, as in the *McCollum* case, where the widow's election was such as to leave a half of the estate undisposed of; or as in *In re Estate of Koller,* where the undue influence exercised by the residuary legatee left the residue undisposed of. But it is not applicable to the instant case because Frank L. Mooney did not die intestate as to any of his estate. His will made a complete disposition of all his estate.

The fee title to the residue of the estate after the payment of specific bequests was intended to vest in the trustees named in the will, William Horton Munger and Grace Elizabeth Mooney. A will which devises property

to trustee, providing for the maintenance of a person and the payment of an annuity under certain conditions, creates a testamentary trust. *Schick v. Whitcomb,* 68 Neb. 784, 94 N. W. 1023; *Will of Smith,* 176 Wis. 494, 186 N. W. 180. Whether a trust has been created in a will is largely a question of intention to be determined from the will in connection with surrounding circumstances. 69 C. J. 709; *Sears v. Cunningham,* 122 Mass. 538; *Pollock's Estate,* 306 Pa. St. 301, 159 Atl. 555.

In *Weller v. Noffsinger,* 57 Neb. 455, 77 N. W. 1075, it was held: "A devise, subject to a condition that the executor shall hold the property in trust for a number of years and collect rents, pay taxes, charges, and expenses incident to the proper care of the estate, and account annually to the beneficiary for the balance, vests the legal title to the property in the executor." See, also, *Clark v. Fleischmann,* 81 Neb. 445, 116 N. W. 290, in which it was held: "Where by the terms of a will the executor and trustee is invested with the management and direction of the real property of the testator, and is required to devote sufficient of the rents and profits to the support of his widow and daughter during their life, and to furnish aid to his father and mother, if their financial condition requires it, retaining any surplus not required for such purposes until sufficient is accumulated to discharge a mortgage on the home of the widow, the legal title to such real estate vests in the executor and trustee until the trust created by the will is discharged."

Here the language of the will created a testamentary trust, which imposed certain duties and conferred certain powers upon the trustees as to the property, which could not be performed except that the estate vested in them. They were required to provide for the maintenance of the incompetent son, if necessary, during his entire life. If he recovered, they were to pay him the sum of $2,000 per year, not from the income, but from the estate. These duties imposed upon them by the will could not be effectively performed unless they were vested with the legal title.

This necessity is an attendant circumstance to be considered in connection with the express language of the will.

About two years after the creation of this testamentary trust the incompetent son of the testator died. It was then that this controversy arose for the practical purpose of determining if this property were a part of the estate of Frank A. Mooney to be distributed to his heirs at law. The will expresses no intention of the testator as to what shall be done with the trust estate in the event of the death of Frank A. Mooney. Upon his death the trust was terminated.

This question has been considered and discussed frequently. A recognized work states the rules applicable as follows: "Where property is conveyed upon an express trust which fails, in whole or in part, a resulting trust arises as against the trustee in favor of the grantor and those claiming under him in the property conveyed or in the residue of the property remaining at the time of the failure or extinguishment of the trust, if the property is not otherwise disposed of. * * * The rule * * * applies in a case where the trust fails by reason of the fact that the beneficiary dies or becomes non-existent or does not come into existence. * * * The rule * * * applies where the purposes of the trust fail, as where the objects and purposes of the trust have ceased, or it no longer can be executed pursuant to its provisions." 65 C. J. 376.

Restatement, Trusts, sec. 411, states the rule in the following language: "Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality."

Again, in comment c, sec. 411, it is said: "If real property is devised upon a trust which fails and there is

no provision in the will effectively disposing of the residue of the testator's real property, the devisee holds it upon a resulting trust for the heir of the testator."

Section 430 of the same work also says: "Where the owner of property gratuitously transfers it upon a trust which is properly declared but which is fully performed without exhausting the trust estate, the trustee holds the surplus upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust of the surplus should arise."

In section 430, comment c, it is said: "Where the owner of property devises or bequeaths it upon a trust which is fully performed without exhausting the entire property so devised or bequeathed, the devisee or legatee holds the surplus upon a resulting trust for the estate of the settlor."

These statements of the law are supported by numerous cases. See *Blount v. Walker*, 31 S. Car. 13, 9 S. E. 804; *Chater v. Carter*, 238 U. S. 572, 59 L. Ed. 1462; *Leech's Estate*, 274 Pa. St. 369, 118 Atl. 354; *Bancroft v. Maine State Sanatorium Ass'n*, 119 Me. 56, 109 Atl. 585.

The great weight of authority supports the view that, upon the failure of an express trust as in this case, the trustee holds the trust estate upon a resulting trust for the heirs of the testator as of the date of the failure of the trust. This conclusion is substantially the same as the county court in the first decree and as the trial court upon appeal. For this reason it is unnecessary for this court to determine the necessity of vacating the decree or the powers of the county court to vacate and enter a new decree under the circumstances. The judgment of the trial court is

AFFIRMED.