240 F.2d 732
 Ruth POLSKY, Appellant,
v.
CONTINENTAL NATIONAL BANK OF LINCOLN, NEBRASKA, a Corporation, et al., Appellees.
Helen BERNSTEIN, Appellant,
v.
CONTINENTAL NATIONAL BANK OF LINCOLN, NEBRASKA, a Corporation, et al., Appellees.
 No. 15543.
 No. 15550.
 United States Court of Appeals Eighth Circuit.
 January 25, 1957.
 
 G. L. DeLacy and Eugene N. Blazer, Omaha, Neb., for Ruth Polsky, appellant.
 Louis E. Lipp, Omaha, Neb. (Fred S. White, Omaha, Neb., with him on the brief), for Helen Bernstein, appellant.
 Herman Ginsberg, Lincoln, Neb. (Max Kier, Lincoln, Neb., with him on the brief), for Ella R. Poska, as Surviving Executrix and others, appellees.
 Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.
 JOHNSEN, Circuit Judge.
 
 
 1
 The will of Morris Polsky, deceased, devised Lots 8 and 14, Block 42, Original Plat of the City of Lincoln, Nebraska, to a trustee, and gave the income of the trust to the testator's wife Rachel, his son Bernard, and his daughter Ruth, during its term, if they continued to survive.
 
 
 2
 The trust was to have existence for a minimum term of 25 years, from the making of the will. If, however, the wife lived longer, the trust was to continue until her death. And in the event that the son (who was in ill health) should survive beyond this, the trust further was not to terminate, until he reached the age of 55 years.
 
 
 3
 The will was dated July 19, 1928. The testator died in 1929, with Rachel, Bernard and Ruth all surviving him. Bernard's health continued to decline, and he died in 1931, 22 years of age and unmarried. Rachel, who was the testator's second wife and the mother of Bernard but not of Ruth, lived until 1936. Ruth, who was the child of the testator's first marriage, remained surviving through the 25-year trust-term.
 
 
 4
 Upon the expiration of 25 years from the date of the making of the will, in 1953, Ruth instituted this suit,[1] to have it decreed that the trust had terminated, and to have it declared that the corpus thereof was now vested in her. Her complaint alleged that she had become vested, at the time the trust so terminated, with an undivided one-half interest in its corpus, as remainderman, by a devise of the will; and that, because of the non-survival at that time of the contingent remaindermen to whom the other undivided one-half had been devised over on the trust's termination, such undivided one-half of the corpus had been caused to revert, and hence to pass by devolution to her, as her father's then only heir at law.
 
 
 5
 Rachel had left a will, containing a residuary clause, which had been duly probated on her death in 1936, and the surviving executrix and the beneficiaries thereunder[2] made appearance in the present suit, opposingly to Ruth, in respect to the undivided one-half interest which Ruth claimed had reverted and become intestate property of her father when the trust terminated. They sought to have the court hold that this part of the trust corpus had, under the provisions of Morris Polsky's will, vested in equitable remainder in Rachel, at the time that Bernard's death occurred, and had thus, both legally and under the authority of Morris Polsky's will, become subject to testamentary disposition by her, and that Ruth was accordingly without any basis of right or claim thereto.
 
 
 6
 A third reach against this undivided one-half interest was made by Helen Bernstein, niece of Rachel, who asked the court to declare that this part of the trust corpus was, as contended by Rachel's executrix and beneficiaries, vested in equitable remainder in Rachel from the time of Bernard's death, but that, contrary to the claim of Rachel's executrix and beneficiaries, the equitable fee of Rachel was, under the intention of Morris Polsky's will, not subject to a right of testamentary disposition by her, unless she survived until July 19, 1953, which she had not. Helen claimed that the one-half interest thus constituted intestate property of Rachel, which passed by descent to Rachel's only two heirs at law, of which Helen was one.
 
 
 7
 As will have been noted, the controversy here involved relates solely to one of the undivided-half interests in the trust corpus. The trial court upheld the contentions of the executrix and testamentary beneficiaries of Rachel; and Ruth Polsky and Helen Bernstein have each taken an appeal. We think that the court's resolution of the matter is under Nebraska law entitled to be affirmed.
 
 
 8
 The will of Morris Polsky was one of numerous paragraphs and provisions. The present controversy centers on the meaning of paragraph 13 of the will, on the basis of the language used therein and such implications of intention in respect thereto as can be said to be manifested by any of the other provisions of the instrument and by a reading of the will in its whole.
 
 
 9
 Paragraph 13, after setting out a description of the trust property and making provision for various contingencies in the distribution of the income therefrom, went on to provide: "It is my desire and I so will that the properties in this paragraph described be not sold or encumbered during the life of my said wife, Rachel C. Polsky. After the death of my said wife, Rachel C. Polsky, my said children, Ruth Polsky and Bernard S. Polsky, shall not sell, encumber or in any way dispose of his or her interest in said property in this paragraph described until my son, Bernard S. Polsky, shall have reached the age of fifty-five (55) years. When my son, Bernard S. Polsky, shall have reached the age of fifty-five (55) years said trust as to the property in this paragraph described shall cease and determine, provided my wife, Rachel C. Polsky, shall not be living at the time my son, Bernard S. Polsky, reaches the age of fifty-five (55) years. If my said wife, Rachel C. Polsky, survives me and be living at the time my said son, Bernard S. Polsky, reaches the age of fifty-five (55) years, then said trust shall not cease, nor shall said property be divided until the death of my wife Rachel Polsky, but upon the death of my said wife, Rachel C. Polsky, and upon my son, Bernard S. Polsky, having reached the age of fifty-five (55) years, then said trust shall cease and determine, and in such event my said son, Bernard S. Polsky, shall take in fee an undivided five-eighths (5/8) interest in and to the property in paragraph 13 herein described and my said daughter, Ruth Polsky, in that event shall take and hold in fee simple an undivided three-fifths (3/5) [sic] interest in and to the property in this paragraph 13 herein described. Provided, however, that twenty-five years shall have elapsed from the date of making this will. Should my said son, Bernard S. Polsky, die prior to reaching the age of fifty-five (55) years without issue, then the property in paragraph 13 herein described shall vest in fee in my said wife, Rachel C. Polsky, and my daughter, Ruth Polsky, share and share alike, provided twenty-five (25) years shall have elapsed from the date of making this will and provided further that said property shall not be sold, encumbered or disposed of during the life of my said wife, Rachel C. Polsky. However, should my wife, Rachel C. Polsky, take a fee interest in and to the property in paragraph 13 herein described and as herein set out, she shall have the right to dispose by will of her fee interest in and to the property in paragraph 13 described." (Emphasis ours.)
 
 
 10
 The part to which we have given emphasis is that which is immediately involved.
 
 
 11
 Appellant Ruth Polsky argues that paragraphs 14, 16 and 23 of the will, though they never became operative, point, when read in conjunction with paragraph 13, to an intention by the testator generally, that no interest in the trust corpus was to become vested in any beneficiary, until 25 years had elapsed from the making of the will.
 
 
 12
 Paragraph 14 provided: "Should said Bernard S. Polsky die before reaching the age of fifty-five years leaving issue, then such issue shall receive the income from the property in paragraph 13 herein described, share and share alike, so coming to the said Bernard S. Polsky for the balance of the period of twenty-five years from and after the date of this will, and at the end of said twenty-five year period then said issue shall take a fee interest in and to the one-half of the property in paragraph 13 herein described, share and share alike, subject, however, to the right of my said wife, Rachel C. Polsky, if living, to receive the income on one-half of the one-half fee interest during her life."
 
 
 13
 Paragraph 16 provided: "Should my said daughter, Ruth Polsky, die leaving issue, then such issue shall receive the income from the property in paragraph 13 hereof described, share and share alike so coming to the said Ruth Polsky for the balance of the twenty-five year period from and after the date of this will and at the end of said twenty-five year period then said issue shall take the fee interest, share and share alike, in and to the property in paragraph 13 described, provided said property shall not be sold, encumbered or otherwise disposed of during the life of my said wife, Rachel C. Polsky."
 
 
 14
 Paragraph 23 provided: "If my said children, Ruth Polsky and Bernard S. Polsky, die without issue, my wife, Rachel C. Polsky, not surviving the survivor of my said children, Ruth Polsky and Bernard S. Polsky, or if surviving, die, then I direct my said trustee to divide my said estate into two parts, one of which shall vest in the heirs of Ruth Polsky and Bernard S. Polsky, as of the dates of their respective deaths, and the other part of my estate shall be divided into five parts by my said trustee and one of said parts shall vest absolutely in the following named institutions * *."
 
 
 15
 The trial court felt that these subsequent paragraphs were not of controlling or convincing indication as to the testator's intention under paragraph 13. Each of them dealt with special contingencies, none of which had occurred or were affectingly involved in the part of paragraph 13 that became operative. And paragraph 23 was one of general terms only, making no specific reference to the trust corpus of paragraph 13 but speaking only of "my said estate" (the will had put other property in trust also), so that it was not on its face required to be regarded as legally nullifying or modifying the express provision of paragraph 13, that "should my wife, Rachel C. Polsky, take a fee interest in and to the property in paragraph 13 herein described and as herein set out, she shall have the right to dispose by will of her fee interest in and to the property in paragraph 13 described". In addition, each of the paragraphs also seemingly would, if any of them had become operative, not have been without constructional difficulties of its own.
 
 
 16
 While the court thus considered and attempted to appraise the testator's intention on the entirety of the will, it concluded that the matter, for purposes of the present suit, essentially got down to an interpretation and application of the language of paragraph 13 itself, in the perspective of the legal naturalness and consequences involved in its operation, and under the guide of the recognized canons of construction. The court, as its memorandum opinion indicates, was fully appreciative of the substantiality inhering in each of the two opposing positions — that of Ruth and that of the beneficiaries of Rachel — in arriving at its determination. The situation, as is readily apparent, was one requiring repeated reading of, and sustained pondering on, the language and the context involved. All of this the court abundantly gave to the parties — as, it may be added, we too have done.
 
 
 17
 It is the expression, "provided twenty-five (25) years shall have elapsed from the date of making this will", which gives rise to the constructional difficulty. Manifestly, its use in the will was without facial clarity or legal exactness. And such elements of equivocalness are involved in relation to it that we cannot say, either as a matter of law or of conviction, that the trial court erred in refusing to hold, as contended for by appellant Ruth, that the use and re-use of the proviso-expression, in connection with each of the possibilities provided for as to the trust property, established the intention that all of these devises were to be contingent interests or remainders, not subject to vesting in any beneficiary until the expiration of 25 years from the date of the will. In fact, repeated reading and sustained pondering increasingly impress us that not merely was the trial court's conclusion an allowable one under Nebraska law, but that it also would be generally the more persuasive one as well.
 
 
 18
 It has been suggested that delay in remainder-vesting is a natural and fortified view in the situation, from the fact that the title and responsibilities of the trustee as to the property were concededly those of an active and not a passive trust. But in the significance of this aspect, it would be entitled to be noticed also that the active nature of the trust was to continue, not just for 25 years, but also for as long thereafter as the trust should endure, whether by reason of the widow's or Bernard's survival or both. Thus, the fact that an active trust was involved would not lend much persuasion that the 25-year term had any special distinctiveness in relation to the question of equitable vesting. Moreover, within this focus, the language of the proviso would not of itself seem to be any more indicative of an intent that no remainder should become vested until the expiration of 25 years than of an intent that no remainder should at all become vested until the termination of the trust, if it should have a longer duration. Yet, all here admit that duration of the trust beyond the 25 years would not have prevented the remainders from vesting.
 
 
 19
 Of possible significance also on what the testator's purpose was in using the 25-year proviso is the fact that, in the initial appearance of the expression in paragraph 13 of the will, the meaning for which appellant contends would make its use contribute nothing, either directly or contextually, to the provisions which immediately precede it. It is first made to appear in paragraph 13 as a separate sentence, immediately following a provision for the termination of the trust and the taking of the property in fee simple by Bernard and Ruth, in case Bernard reached the age of 55 and the testator's widow was then dead. It could not make any difference in relation to the accomplishing of this provision when title might be vested in the two remaindermen. If, therefore, the proviso is to be treated as having any significance at this point in the will that significance would seem to lie in its apparent flagging or emphasis of the fact that, regardless of the widow's non-survival or of anything else, the trust was in all events to have a duration of 25 years.
 
 
 20
 Such a reading of the proviso, as having been intended simply to prevent any beneficiaries, regardless of the vesting of the remainders, from in any way undertaking to oust the trustee of title to or possession of the trust property until July 19, 1953, also gives sense and utility to the proviso, in the places where it further appears in the will. It allows recognition of, and avoids any conflict with, the use of the term "shall vest" (emphasis ours), in the provision that is here immediately involved (omitting the proviso), that "Should my said son, Bernard S. Polsky, die prior to reaching the age of fifty-five (55) years without issue, then the property in paragraph 13 herein described shall vest in fee in my said wife, Rachel C. Polsky, and my daughter, Ruth Polsky, share and share alike * * *".
 
 
 21
 It further makes the second proviso of the devise, "provided further that said property shall not be sold, encumbered or disposed of during the life of my said wife, Rachel C. Polsky", possess a practical significance, which it realistically would lack, if merely contingent remainders were involved. Safeguards against the unlikely selling or encumbering of mere contingent interests are not normally a matter of special testator solicitude.
 
 
 22
 Again, by such a reading as the trial court made, the final sentence of paragraph 13 — "However, should my wife, Rachel Polsky, take a fee interest in and to the property in paragraph 13 described and as herein set out, she shall have the right to dispose by will of her fee interest in and to the property in paragraph 13 described" — is left with plain and direct purpose, in eliminating any doubt as to the wife's testamentary right, in view of the general prohibition precedingly imposed, that the property could not be "sold, encumbered or disposed of" during her life.
 
 
 23
 Other elements in the situation have been urged upon us in support of the trial court's construction, but of these we need not make mention of more than one. This is the generally significant testamentary circumstance that, after providing that the undivided one-half interest involved should, if Bernard died before reaching the age of 55 and without issue, "vest in fee in my wife", Morris Polsky had not assumed to make any devise over, in relation to the wife's death, no matter when it might occur.
 
 
 24
 In view of the many specific contingencies for which the testator had made provision in the disposition of his estate, one is impressed that he and his attorney had painstakingly sought to avoid leaving any such vacuum as to any part of his property, as is here claimed by appellant Ruth to exist. This fact, in conjunction with his use of the term "shall vest", in the devise made to his wife, and his precaution to make it specifically clear that the prohibition against sale, encumbrance or other disposition of the property during her life was not to affect "the right to dispose by will of her fee interest", tends to add confirmation to an intent on his part to vest the undivided one-half interest involved in his wife, Rachel, in case Bernard died and had no issue, and that thus, whether Rachel should herself die before the 25-year period of the trust had elapsed or not, there was nothing remaining which called for or would entitle him to make a devise over as to this particular share of the trust property.
 
 
 25
 In relationship also to what has been said and to the trial court's resolution, some of the policies and principles of Nebraska law may briefly be noted.
 
 
 26
 "There is a presumption that a testator intended to dispose of his entire estate and not to die intestate either as to the whole or as to any part thereof, and where a provision of a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of the estate will not be adopted if by any reasonable construction it can be avoided." Goodrich v. Bonham, 142 Neb. 489, 6 N.W.2d 788, 790; Attebery v. Prentice, 158 Neb. 795, 65 N. W.2d 138, 144 — quoting from 69 C. J. 91.
 
 
 27
 In the determination of whether a will has created a contingent or a vested remainder, "The policy of the law has always been to look with favor upon the early vesting of estates, and a remainder will never be held to be contingent if it can reasonably be held to be a vested remainder." Wilkins v. Rowan, 107 Neb. 180, 185 N.W. 437, 439; In re Moore's Estate, 147 Neb. 434, 23 N.W.2d 685.
 
 
 28
 And in the appraising of whether a contingent or a vested remainder has been intended, "It is the present capacity of taking effect in possession, if the possession were to become vacant, not the certainty that it ever will become vacant while the remainder continues, which distinguishes a vested from a contingent remainder." Schuyler v. Hanna, 31 Neb. 307, 47 N.W. 932, 933-934, 11 L.R.A. 321.
 
 
 29
 Further, although a devise in active trust vests the legal title to the property in the trustee, this, of course, does not prevent the testator from creating vested equitable-fee interests in the corpus by way of remainder. Weller v. Noffsinger, 57 Neb. 455, 77 N.W. 1075. And such a vested equitable-fee remainder may validly be made the subject of restraints or conditions on alienation, Id., 77 N.W. at page 1077, which are capable of having effect until the interest ripens into a full fee-simple title, Andrews v. Hall, 156 Neb. 817, 58 N.W.2d 201, 42 A.L.R. 2d 1239.
 
 
 30
 What has been said seems to us sufficient to demonstrate that we cannot, with necessary appellate conviction, declare that the construction and conclusion consideredly arrived at by the trial court were, on the language of the will and under the principles of Nebraska law, a clearly erroneous appraisal of Morris Polsky's legal testamentary intent.
 
 
 31
 Since, by the construction made, title to the undivided one-half interest involved became vested in the wife, Rachel, at the time that Bernard died, the cases of In re Mooney's Estate, 131 Neb. 52, 267 N.W. 196, and Dennis v. Omaha National Bank, 153 Neb. 865, 46 N.W.2d 606, 27 A.L.R.2d 674, cited by appellant Ruth, are without application and call for no discussion. Also, in view of our sustaining of the holding that this vesting of equitable-fee interest made it directly subject to the provision of the will that Rachel should "have the right to dispose by will of her fee interest", there is no occasion to deal further with the contentions of appellant Helen Bernstein.
 
 
 32
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Proceedings to have the will construed in other respects have previously been before the District Court, and one of these proceedings was made the subject of an appeal here. See Polsky v. Continental Nat. Bank of Lincoln, Nebraska, 8 Cir., 110 F.2d 50
 
 
 [2]
 In addition to the successors in interest of the residuary devisee of Rachel Polsky, the surviving executrix and some of the legatees under her will also appeared, because of the insufficiency of her estate to pay in full all of the pecuniary bequests for which her will had provided. It is unnecessary for present purposes, however, to make further identification of these various persons. The trustee also, of course, was made a party but took no side in the controversy